**John H. JOYNT, Appellant,**

v.

**Harold J. SCHUSTER, Appellee.**

**No. 4358.**

District of Columbia Court of Appeals.

Argued Feb. 17, 1969.

Decided July 17, 1969.

---

Arthur J. Hilland, Rockville, Md., with whom James E. Hogan, Washington, D. C., was on the brief, for appellant.

Marvin C. Taylor for appellee.

Before HOOD, Chief Judge, and FICK-LING and GALLAGHER, Associate Judges.

HOOD, Chief Judge.

The subject of this action is the sale of an antique chest-on-chest once owned by Stephen Girard. At the time of the sale the chest was owned by Mrs. Stauffer, a collector of antiques who resided at Easton, Pennsylvania. Desiring to sell the chest, Mrs. Stauffer went to see Mr. Schuster, an antique dealer whom she had known for some time. She asked if he could find a buyer for the chest. In answer to his inquiry she said she wished to receive $15,000.00 for the chest, that this was her net price. Although nothing was said about Mr. Schuster's compensation, Mrs. Stauffer in her testimony made it plain that it was her intention that she would pay no commission and that Mr. Schuster's compensation would be any excess of the sales price over $15,000.00. This too was Mr. Schuster's understanding of the arrangement. He promised Mrs. Stauffer he would make every effort to find a buyer.

Mr. Schuster offered the chest to the State Department, at Washington, D. C., for a price of $20,000.00. The State De-

partment was interested in acquiring the chest but was unable to find anyone to buy the chest and donate it to the Department. When it was apparent that the State Department could not acquire the chest, its representative notified Mr. Joynt, a resident of Alexandria, Virginia, and a collector of antiques, that the chest was available for purchase and gave him the name of Mr. Schuster. Mr. Joynt was interested and he called Mr. Schuster, whom he had never met, and inquired about the chest. Mr. Schuster told Mr. Joynt that he was endeavoring to sell the chest and was then negotiating for its sale to a Philadelphia museum at a price of $25,000.00. Mr. Joynt gave Mr. Schuster his address and telephone number and asked to be called if the sale to the museum did not take place.

Mr. Joynt did not hear from Mr. Schuster but later learned from the State Department representative that the museum had not purchased the chest. He then called Mr. Schuster who confirmed the report that no sale had been made, and that the chest was available at $22,000.00, $2,000.00 more than the price originally offered to the State Department. Mr. Joynt expressed a desire to see the chest with a view to purchasing it, and arranged to meet Mr. Schuster at Allentown, Pennsylvania. They met at Allentown and had a conversation. What occurred at the conversation is the crucial point in this case. The two versions are completely at variance, but in view of the trial court's general finding we must accept that of Mr. Schuster. He testified he told Mr. Joynt that the price was $22,000.00, that the owner was to receive $15,000.00 and he was to receive $7,000.00: and that if Joynt objected to this arrangement he would not be taken to see the chest. He further testified that Mr. Joynt neither objected nor assented but did get into Schuster's car and accompany him to the home of Mrs. Stauffer where they met her and made a careful inspection of the chest.[1]

There was no discussion of the price at the home of Mrs. Stauffer. Mr. Joynt on leaving said he would have to think the matter over.

Within a week Mr. Joynt called Mr. Schuster and said he liked the chest and he and his wife wanted to take another look at it. Mr. Schuster arranged for the second visit and accompanied the Joynts to Mrs. Stauffer's home. Before making this trip Mr. Joynt had gone to his bank and secured $20,000.00 in cash which he took with him.

When they arrived at Mrs. Stauffer's home, Mr. Joynt again inspected the chest and then engaged in a conversation with Mrs. Stauffer. There is a conflict of testimony concerning this conversation and again we accept that most favorable to Mr. Schuster. Joynt asked Mrs. Stauffer what was her best cash price for the chest. She replied, that her price, as she had "told Mr. Schuster", was $15,000.00. He then inquired if she would pay Mr. Schuster a commission. This question surprised Mrs. Stauffer, as she had never intended to pay a commission out of her price of $15,000.00. She stammered a little, said she had not anticipated this and finally said she would "give him [Mr. Schuster] something." Thereupon Mr. Joynt announced he would take the chest, placed $15,000.00 in cash on the table and requested a receipt from Mrs. Stauffer. While she was writing the receipt, he asked that it recite that she would pay the commission. She refused this request.

After the money had been counted and a receipt given, Mr. Joynt rented a U-Haul trailer and he and his wife departed with the chest. Mr. Schuster was present during the transaction between Mrs. Stauffer and Mr. Joynt but took no part in it and made no comment. He assisted Mr. Joynt in placing the chest in the trailer. While waiting for the trailer, Mrs. Stauffer and

1. Joynt testified that he was informed that the price was $22,000.00 and that Mrs. Stauffer insisted on being paid cash, and he admitted he could not have seen the chest except by arrangement with Schuster, but he denied being told of the breakdown in the price of $15,000.00 to Mrs. Stauffer and $7,000.00 to Schuster.

Mrs. Joynt had a conversation alone. Again there are conflicting versions of the conversation, but basically the conversation was begun by Mrs. Joynt asking what commission Mrs. Stauffer intended to pay Mr. Schuster. When Mrs. Stauffer replied she intended to give him a little present, Mrs. Joynt said he should receive $1,000.00 and that if Mrs. Stauffer would pay him that amount the Joynts would reimburse her for the full amount. Mrs. Joynt's version was that Mrs. Stauffer said she was going to pay $500.00 and Mrs. Joynt said he should receive 10% or $1,500.00 and she and her husband would make up the balance of $1,000.00.

After the Joynts had left, Mrs. Stauffer gave Mr. Schuster $1,000.00 and he gave her a receipt for it, but two days later he returned the money and got back his receipt. He then demanded that Mr. Joynt pay him $7,000.00. When his demand was refused this action was brought and the trial court, sitting without a jury and making no specific findings of fact, awarded Mr. Schuster the claimed amount.

■ On this appeal Joynt argues first that his silence cannot be construed as an assent to Schuster's proposal that he was to receive $7,000.00 should Joynt purchase the chest. We agree that silence will not constitute acceptance of an offer in the absence of a duty to speak.[2] But here there was more than silence and there was a duty to speak. Joynt sought out Schuster and asked for the opportunity to see the chest with a view to buying it. When Schuster stated the terms on which Joynt could see the chest, Joynt accepted those terms, not by silence alone but by availing himself of Schuster's services. If those terms were not acceptable, Joynt should have said so. He could have refused the terms or sought a modification of them. When he accepted Schuster's services, he accepted them on the terms they were offered.

■ The second point raised argues that Schuster's agreement with the owner to see that she netted $15,000.00 on any sale did not mean he could keep any amount over that figure as his commission. This argument is refuted by Mrs. Stauffer's testimony that under her agreement she "thought it was none of my business what he [Schuster] got for the chest, if I got what I needed to get, it was up to him to get what he wanted to get." That testimony also answers the third point that Schuster was the owner's agent and therefore his undisclosed contract with Joynt for a $7,000.00 commission was illegal and unenforceable. Where a broker is authorized by his principal to negotiate for his compensation with the other party, the broker is entitled to receive the agreed compensation.[3]

■ The fourth point made is that Schuster's failure to protest when, in his presence, the buyer and the seller negotiated a sale that contemplated that the seller would pay for his commission, estops him from demanding that the buyer pay it. This argument assumes that as part of the sale Mrs. Stauffer agreed to pay the commission. Her testimony was to the contrary. She said she agreed to pay "something" but she never agreed to pay the commission and refused Joynt's request that she state in the receipt that she would pay the commission. On this record we cannot rule as a matter of law that there was an estoppel and the trial court found no estoppel as a matter of fact.

■ The final argument is that Schuster's acceptance of $1,000.00 from Mrs. Stauffer constituted an accord and satisfaction. Although payment on behalf of a debtor by a third party, without the authorization or knowledge of the debtor, may constitute an accord and satisfaction if subsequently ratified by the debtor, there was no ratification here. Joynt took the

2. Solis-Cohen v. Phoenix Mutual Life Ins. Co., 413 Pa. 633, 198 A.2d 554 (1964).

3. Christensen v. Redman, 243 Minn. 130, 66 N.W.2d 790 (1954); Fulton v. Walters, 216 Pa. 56, 64 A. 860 (1906).

position that he was not liable for the commission in whole or in part. The negotiation between Mrs. Joynt and Mrs. Stauffer occurred out of Joynt's presence and without his knowledge. Had Mr. Joynt, when he learned of his wife's conversation with Mrs. Stauffer forwarded $1,000.00 to Mrs. Stauffer before she received her money back from Schuster, we would have a different question. In the case before us there was no accord and satisfaction between Joynt and Schuster.

Affirmed.